UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| SANDRA SMITH, | : |
| As Executrix of the | |
| Estate of Josephine Giaimo | : NO. 3:01 CV 1375(AHN) |
| | |
| vs. | : |
| | |
| TOWN OF EAST HAVEN | : |
| Individual Officers: Mike D'Amato, Badge #0430; | : |
| David Torello, Badge # 1750; | : |
| John Cascio, Badge # 0310 | : |
| Lisa Scaramella, Badge #1580; and | : |
| Kevin McCarthy, Badge #1080 | : MAY 21, 2004 |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff's decedent was shot to death by her estranged husband.  Plaintiff alleges federal civil rights violations and state law claims sounding in negligence against the defendant police officers and the Town of East Haven.  Specifically, plaintiff claims that the defendant police officers knew, or should have known, of the danger to her decedent and failed to take appropriate action to protect her.  The individual officers claim they are entitled to qualified and governmental immunity as a matter of law, while the Town of East Haven maintains it is entitled to summary judgment on plaintiff's claim under Monnell v. New York Department of Social Services, 436 U.S. 658, 694 (1978).  As discussed extensively below, however, the record discloses genuine issues of material fact that preclude entry of summary judgment in this case.

I.    **Facts**

On July 20, 2000, while attending an open-air concert on the East Haven Green, Josephine Giaimo was murdered by her estranged husband, Frank Cosenza.  Mr. Cosenza shot Mrs. Giaimo in the head with a gun that he owned.  (Scobie Dep. at 30) (Exhibit A).  At the time of the shooting, Mrs. Giaimo was in the process of divorcing Mr. Cosenza, and had asked him to leave the marital home in May of 2000.  (Smith Dep. at 24) (Exhibit B); (Joanne Giaimo Dep. at 20) (Exhibit C).  In late June of 2000, Mr. Cosenza began making harassing phone calls to Mrs. Giaimo.  (Scaramella-Nubig Dep. at 19-24) (Exhibit D).  Mrs. Giaimo reported those harassing phone calls to the East Haven Police Department, and Officer Lisa Scaramella Nubig responded on June 28, 2000 at 3:01 p.m.  (6/28/00 police report) (Exhibit E).  Officer Scaramella completed a report chronicling Mrs. Giaimo's account that Mr. Cosenza tried to follow her and had threatened to come to her home. (Exhibit E).  After Officer Scaramella-Nubig completed her report, she took no further action on the case and completed no further investigation.  (Scaramella-Nubig Dep. at 25-26) (Exhibit D).

Later that day, Mrs. Giaimo again called the East Haven Police Department to report a further incident involving Mr. Cosenza.  Officer John Cascio responded to the call.  Mrs. Giaimo, in an emotionally distraught state, reported to Officer Cascio that she had seen Mr. Cosenza peering into her window, after which Mr. Cosenza called her to describe what she was wearing.  (Exhibit F).  Mrs. Giaimo was clearly upset, and informed Officer Cascio that Mr. Cosenza had a gun permit.  (Cascio Dep. at 37) (Exhibit G).  Officer Cascio asked Mrs.

Giaimo whether Mr. Cosenza owned or had guns, and Mrs. Giaimo indicated she thought he did.  (Cascio Dep. at 38).

Officer Cascio advised Mrs. Giaimo to obtain a restraining order against Mr. Cosenza.  (Exhibit F); (Cascio Dep. at 46) (Exhibit G).  In doing so, Officer Cascio assured her that obtaining a restraining order meant that Mr. Cosenza's guns and gun permit would be taken away.  (Cascio Dep. at 47-48) (Exhibit G).  Despite giving that assurance, Officer Cascio just assumed the State Police would remove the guns.  (Cascio Dep. at  48) (Exhibit G).  In fact, the East Haven Police Department had no policy and procedure in place for handling domestic violence incidents generally, or for confiscating guns pursuant to restraining orders, in particular.  (Gallo Dep. at 17-23)  (Exhibit H).  Chief Gallo, one of the policy makers for the East Haven Police Department, believed the policy and procedure at the time was provided on the back of the restraining order.  (Gallo Dep. at 20-21)  (Exhibit H).  Officer Cascio, however, indicated there were policy choices facing East Haven officers.  He testified that, at the relevant time, an officer could allow the State Police to handle the confiscation, or if the officer believed someone was in danger of imminent harm, the guns could be taken away – even without a restraining order:  " . . . we have always taken guns from people.  I mean it's not like we have to wait for a restraining order to come out." (Cascio Dep. at 64-65) (Exhibit G).  At the time, the East Haven Police Department allowed an individual officer to choose whether or not to investigate further -- no policy existed to facilitate this choice.  Chief Gallo opined that nothing prevented an officer from doing an investigation to see whether an individual subject to a restraining order

surrendered his guns, that is, an individual officer would be allowed to investigate further if he or she chose to do so.  (Gallo Dep. at 23; 45)  (Exhibit H).

After Officer Cascio met with Mrs. Giaimo on June 28, 2000, he attempted to contact Mr. Cosenza by phone.  He was unsuccessful, but left voice massages.  (Cascio Dep. at 45; 50) (Exhibit G).  Officer Cascio, then off-duty, went to Mr. Cosenza's residence to speak with him, and to "set the boundaries" with him.  (Cascio Dep. at 46) (Exhibit G).  Although Mr. Cosenza was not home, Officer Cascio left his card and a message.  (Cascio Dep. at 50-51) (Exhibit G).  Subsequently, Officer Cascio contacted Mrs. Giaimo to inform her about his efforts and encourage her again to obtain a restraining order.  (Cascio Dep. at 51) (Exhibit G).  Officer Cascio then instructed Mrs. Giaimo to call him if Mr. Cosenza bothered her, giving her his personal cell phone number.  (Cascio Dep. at 52) (Exhibit G).  Officer Cascio "went above and beyond what I normally would do with Mrs. Giaimo."  (Cascio Dep. at 53) (Exhibit G).  Officer Cascio continued his efforts to contact Mr. Cosenza, whom he believed was avoiding him.  (Cascio Dep. at 57) (Exhibit G).  Although he made no attempt to confiscate Mr. Cosenza's guns, Officer Cascio stayed in daily contact with Mrs. Giaimo until she obtained a restraining order.  (Cascio Dep. at 57-58) (Exhibit G).

On July 6, 2000, Mrs. Giaimo obtained a restraining order from the Superior Court at New Haven.  (Exhibit I).  Subsequently, State Marshal Frank T. Baldo served papers relating to that restraining order on Mr. Cosenza and the East Haven Police Department on July 7, 2000.  (Baldo Affidavit at ¶¶ 6; 10-11) (Exhibit J).  Specifically, Marshal Baldo served copies of four pages, or three pages with one page consisting of two sides, which included

the affidavit of Josephine Giaimo.  (Baldo Affidavit at ¶¶ 7; 10) (Exhibit J).  Mrs. Giaimo's

affidavit states that Mr. Cosenza threatened her life on several occasions, and states that

"Frank Cosenza has a gun permit.  Frank Cosenza told me if I ever call the Police again he

will kill me."  (Baldo Affidavit; attachment) (Exhibit J).  Marshal Baldo served East Haven

Officer Michael D'Amato with the process, telling him "this guy has guns" or something to

that effect.  (Baldo Affidavit at ¶¶ 10-11) (Exhibit J).  Officer D'Amato confirmed that

Marshal Baldo told him Mr. Cosenza possessed guns.  (D'Amato Dep. at 12-13) (Exhibit K).

Officer D'Amato simply gave the information to his supervisor and returned to his dispatch

duties.  He made no report, and took no additional action regarding the weapons

information.  (D'Amato Dep. at 12-13) (Exhibit K).

Officer Cascio continued to contact Mrs. Giaimo after she obtained the restraining

order, instructing her to contact the police if Mr. Cosenza violated the order.  (Cascio Dep.

at  66-67) (Exhibit G).  On July 12, 2000, Mr. Cosenza was arrested by Officers David

Torello and Kevin McCarthy for breach of peace, a misdemeanor, after Mr. Cosenza

followed Mrs. Giaimo twice that day and confronted her.  (Torello Dep. at 28-32) (Exhibit L);

(July 12, 2004 Police Report) (Exhibit M).  Although Officer Torello took physical

possession of Mr. Cosenza's gun permit, (Torello Dep. at 42-43) (Exhibit L), neither Officer

Torello nor Officer McCarthy made any attempt to inquire about, or confiscate, any of Mr.

Cosenza's guns -- despite knowing that he had threatened Mrs. Giaimo.  (Torello Dep. at

44) (Exhibit L); (McCarthy Dep. at 13-15) (Exhibit N).

After Mr. Cosenza's arrest, Officer Cascio continued to assist Mrs. Giaimo, speaking both to her and her daughter, Sandra Smith.  (Cascio Dep. at 74-75) (Exhibit G).  Officer Cascio, while off-duty, traveled to the Superior Court at New Haven to speak with the victim's advocate regarding Mr. Cosenza.  Specifically, Officer Cascio wanted to ensure that Mr. Cosenza was not underestimated because of his age, and that he was sent a message about the situation.  (Cascio Dep. at 75-77) (Exhibit G).

Mr. Cosenza shot Mrs. Giaimo to death on July 20, 2000.

## II.    Summary Judgment Standard

The principles governing consideration of summary judgment motions are well established.  Summary judgment should be granted only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett; 477 U.S. 317, 322 (1986).  The court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor.  See, e.g., Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 298 (2d Cir. 1996).  In determining whether summary judgment is appropriate, the court resolves all ambiguities and draws all reasonable inferences against the moving party.  Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997).  Issues of credibility cannot be resolved in the context of a motion for summary judgment.  United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994).  The moving party bears

the burden of demonstrating the absence of a genuine issue of material fact.  <u>Adickes v. S.</u> <u>H. Kress & Co.</u>, 398 U.S. 144, 157 (1970).

### III.    <u>Argument</u>

**A.    Summary judgment on the defendant officers' qualified immunity defense is inappropriate because there is a factual dispute as to whether the defendant officers owed Mrs. Giaimo a duty of protection, the dereliction of which violated a clearly established right.**

Plaintiff alleges that the defendant officers' failure to take appropriate action to protect Mrs. Giaimo from imminent harm at the hands of Frank Cosenza deprived her of her civil rights in violation of 42 U.S.C. §1983.  In particular, the defendant officers each failed to confiscate guns they knew Mr. Cosenza's possessed, even after Mr. Cosenza made threats against Mrs. Giaimo, and even after Mrs. Giaimo obtained a restraining order against him.  "It is well established that in order to state a claim under §1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  <u>Dwares v.</u> <u>City of New York</u>, 985 F.2d 94, 98 (2d Cir. 1993).  The defendant officers claim they are entitled to qualified immunity on plaintiff's civil rights claim because Mrs. Giaimo had no clearly established right to police protection at the relevant time.  Further, the officers

contend that it was objectively reasonable for them to believe their actions did not violate that right.

The Due Process Clause burdens government actors with an affirmative duty to protect its citizens where the government actor enters into a special relationship with an individual.  Because a factual question exists as to whether the East Haven Police Department -- through the actions of Officer Cascio -- created such a special relationship with Mrs. Giaimo, summary judgment is inappropriate.  Similarly, whether the officers' failure to take more effective measures to protect Mrs. Giaimo from Mr. Cosenza, in particular to confiscate his weapons, was objectively reasonable likewise depends on the existence and nature of such a special relationship – also a factual question which precludes summary judgment.

The doctrine of qualified immunity shields public officials from liability under two circumstances:  (1) where the official's conduct does not violate clearly established statutory or constitutional rights about which a reasonable person would have known; or (2) where it was objectively reasonable for the official to believe that his actions did not violate those rights.  Loria v. Gorman, 306 F.3d 1271, 1281-82  (2d Cir. 2002); Whalen v. County of Fulton, 126 F.3d 400, 404 (2d Cir. 1997).  Generally, public officials do not have a constitutional responsibility under the Due Process Clause to safeguard members of the general public against private violence.  See DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 195-97 (1989).  The Second Circuit, however, has interpreted DeShaney to impose upon state actors an affirmative duty of care and

protection with respect to particular individuals when the state actor has entered into a special relationship with that individual. <u>Dwares v. City of New York</u>, 985 F.2d 94, 99 (2d Cir. 1993).

Such a special relationship is created when the public official or governmental entity has increased the danger to the individual, that is, increased the individual's vulnerability. <u>Id.</u> at 98-99. <u>See also</u> <u>Cook v. City of Groton</u>, 952 F.Supp. 101 (D.Conn. 1997), <u>aff'd</u> 129 F.3d 113 (2d Cir. 1997) (holding that "if state officials take action that puts a person in danger, or renders her more vulnerable to danger, they may incur a special duty to protect her under the due process clause."). Although <u>Dwares</u> requires an affirmative act by the public official that increases the vulnerability of the private individual to harm, the District Court in <u>Cook</u> recognized that, in non-custodial situations, "it is not clear how large and direct a role a state must play in creating a danger before it must provide special protection." <u>Id.</u> at 103. The factual circumstances of this case would certainly allow the trier of fact to conclude that the East Haven Police Department, and its individual officers, had a special relationship with Mrs. Giaimo resulting from Officer Cascio's actions toward, and representations to, her. Further, a jury could conclude that this special relationship rendered Mrs. Giaimo more vulnerable because she labored under a false sense of security, failing to take precautions in reliance on the actions of Officer Cascio and the Department.

By his own admission, Officer Cascio went above and beyond for Mrs. Giaimo. He encouraged her to obtain a restraining order, sought out and called Mr. Cosenza while off-

duty, maintained constant phone contact with Mrs. Giaimo – even giving her his personal cell phone number.  Moreover, once Mrs. Giaimo obtained the restraining order, and Mr. Cosenza violated it, Officer Cascio went to the Victim Advocate's Office at the New Haven Superior Court – again on his own time -- to ensure Mr. Cosenza was treated appropriately. Officer Cascio communicated his actions to Mrs. Giaimo, so that she was aware of his attempts to protect her.  Officer Cascio made no attempt to confiscate Mr. Cosenza's guns after the restraining order entered, despite his knowledge of their existence and of Mrs. Giaimo's fear Mr. Cosenza would use those guns against her.  Notwithstanding this, however, Officer Cascio assured Mrs. Giaimo that obtaining a restraining order meant Mr. Cosenza's guns and gun permit would be taken away.  In view of Officer Cascio's affirmative actions regarding Mrs. Giaimo, a fact finder could reasonably conclude that he established a special relationship with her, on behalf of the Department, and his colleague officers.

A fact finder could further conclude that this special relationship increased Mrs. Giaimo's vulnerability.  Specifically, Mrs. Giaimo consistently removed herself from situations involving Mr. Cosenza when she feared for her safety.  She left the marital home for three weeks in May of 2000 because of Mr. Cosenza's abuse, taking refuge with her son and his family.  (Joanne Giaimo Dep. At 16) (Exhibit C).  She immediately removed herself from any subsequent encounter with Mr. Cosenza, for example instantly removing herself from their encounters at Our Lady of Pompeii Church and the shopping plaza. (7/12/00 Police Report) (Exhibit M).  By the time of the July 20th concert, a reasonable fact

finder could conclude that Mrs. Giaimo had let her guard down in reliance on the officers of the East Haven Police Department.  Although Mrs. Giaimo knew that Mr. Cosenza was present on the Green that evening, she did not leave.  Defendants' Local Rule 56(a)(1) statement maintains that after Mr. Cosenza walked away, Mrs. Giaimo "chose" not to alert the police and "refused" to leave the Town Green.  (Defs.' Statement at 21).  Defendants support that statement with inadmissible hearsay from Officer Scobie, who was not present at the scene.  Even if their factual assertion were properly before the Court, Mrs. Giaimo's prior established practice of leaving Mr. Cosenza's presence immediately presents a factual issue for resolution:  did Mrs. Giaimo allow herself to remain on the Green, vulnerable, because she felt protected by the East Haven officers due to the special relationship established by Officer Cascio?

Public officials have a due process duty not to affirmatively render a person more vulnerable to harm – a duty clearly established by DeShaney and Dwares as of June and July, 2000.  Because a factual question exists as to whether the East Haven Police Department, through the actions of Officer Cascio, created a special relationship with Mrs. Giaimo increasing her vulnerability, summary judgment on the officers' qualified immunity defense is inappropriate.

Likewise, whether the officer's failure to take more effective measures to protect Mrs. Giaimo from Mr. Cosenza, in particular to confiscate his weapons, was objectively reasonable depends on the existence and nature of the special relationship between Mrs. Giaimo and the officers – a factual question which precludes summary judgment.  "'The

relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Loria v. Gorman, 306 F.3d 1271, 1281 (2d Cir. 2002) (quoting Saucier v. Katz, 533 U.S. 194, 200 (2001)).  Thus, the "salient question" is whether the state of the law at the time of the challenged conduct gave the officers fair warning that their actions were unconstitutional.  Id. at 1282 (quoting Hope v. Pelzer, 536 U.S. 730 (2002)).

During the summer of 2000, the Second Circuit had interpreted DeShaney to place a Due Process Clause duty of protection on public officers who establish a special relationship with an individual which rendered them more vulnerable.  Thus, the officers had "fair warning" in the summer of 2000 that they had a Due Process duty to protect Mrs. Giaimo as a result of her increased vulnerability stemming from the special relationship created on their behalf by Officer Cascio.  That duty of protection extended to impounding the guns the officers knew Mr. Cosenza had, particularly in view of his reported threats to harm Mrs. Giaimo, and her oft stated fears of that coming to pass.  Thus, whether the officers had a reasonable belief they were not obligated to protect Mrs. Giaimo depends on whether they believed a special relationship existed with her – a question which must be decided by a fact finder on the record evidence adduced.  Where factual disputes preclude meaningful resolution of a qualified immunity defense, summary judgment is improper. Johnson v. Ganim, 342 F.3d 105, 117 (2d Cir. 2003).  See also McKelvie v. Cooper, 190 F.3d 58, 62 (2d Cir. 1999) (finding the record insufficiently developed to permit a conclusion

that the officers' conduct relating to a search was reasonable as a matter of law; summary judgment was inappropriate).

**B.     A fact finder could reasonably conclude that the Town of East Haven police policy makers failed to train their police officers to confront the difficult choice presented by domestic violence situations involving firearms.**

Plaintiff alleges that the East Haven police policy-making officials failed to train their police officers regarding the proper procedure on handgun restriction following issuance of a restraining order.  Generally, a municipality is not liable in respondeat superior for the unconstitutional acts of its employees.  Rather, a municipality is liable under 42 U.S.C. §1983 for injury caused by the "execution of a government's policy or custom, whether made by its lawmakers, or by those whose edicts or acts may fairly be said to represent official policy. .. "  Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 694 (1978).  This liability extends to a deliberate government policy of failing to train or to supervise its officers, when the failure to train amounts to a "deliberate indifference to the rights of the persons with whom the police come into contact."  Anthony v. City of New York, 339 F.3d 129, 139 (2d Cir. 2003).

In order to demonstrate a failure to train amounting to deliberate indifference in the Second Circuit, a § 1983 plaintiff must satisfy three elements:

> (1) that a policymaker of the municipality knows to a moral certainty that its employees will confront a given situation; (2) that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) that the wrong choice by the employee will frequently cause the deprivation of a citizen's constitutional rights.

Nicholson v. Scoppetta, 344 F.3d 154, 166 (2d Cir. 2003) (internal quotations omitted) (citing Young v. County of Fulton, 160 F.3d 899, 903-04 (2d Cir. 1998)).  The record is undisputed that the Town of East Haven and its police policy makers were aware that its officers would confront domestic violence situations, including those involving firearms. (Gallo Dep. at 16-23)  (Exhibit H).  As discussed, supra, an individual in a special relationship with a police department is owed a Due Process duty of protection by that department.  A wrong choice by the police employee concerning the level and method of that protection will certainly deprive the individual of that right.

The issue for resolution, then, is whether domestic violence incidents involving firearms presented East Haven police officers with a difficult choice in June and July of 2000 – a choice which would have been made less difficult had the officers been provided with adequate training.  The testimony of both Officer Cascio and Chief Gallo demonstrates that where a victim of domestic abuse obtains a restraining order, the subject of which possesses guns, individual East Haven Officers are faced with a choice.  Specifically, although Chief Gallo believed the policy and procedure at the time was provided on the back of the restraining order, i.e. that the State Police handled confiscation of guns, Chief Gallo stated that the East Haven Police Department allowed an individual officer to choose

whether or not to investigate further -- nothing prevented an officer from doing an investigation to see whether an individual subject to a restraining order surrendered his guns.  An individual officer would be allowed to investigate further if he or she chose to do so.  (Gallo Dep. at 23; 45)  (Exhibit H).  Officer Cascio's testimony also demonstrated that various potential policy choices were available to East Haven police officers facing restraining orders encompassing guns.  He testified that, at the relevant time, an officer could allow the State Police to handle the confiscation, or, if the officer believed someone was in danger of imminent harm, the guns could be taken away – even without a restraining order:  " . . . we have always taken guns from people.  I mean it's not like we have to wait for a restraining order to come out."  (Cascio Dep. at 64-65) (Exhibit G).  No training was provided to facilitate this choice, however.[1]

From this record, a reasonable fact finder could conclude that the Town of East Haven police policy makers failed to train their police officers to confront the difficult choice presented by domestic violence situations involving firearms, namely, whether and under what circumstances to continue their investigation and to retrieve the firearms themselves. A reasonable fact finder could further conclude that such training would have made the officers' choice less difficult.  For these reasons, summary judgment is inappropriate on plaintiff's claim against the Town of East Haven under Monell.

---

[1] In fact, the East Haven Police Department had no policy and procedure in place for handling domestic violence incidents generally, or for confiscating guns pursuant to restraining orders, in particular.  (Gallo Dep. at 17-23)  (Exhibit H).

**C.    Summary judgment on the defendant officers' governmental immunity claim is inappropriate because factual issues exist as to whether Mrs. Giaimo was an identifiable person subject to imminent harm.**

Plaintiff alleges a negligence claim against the defendant officers under Connecticut law for failing to respond adequately to the serious threat posed to Mrs. Giaimo by Mr. Cosenza.  In particular, plaintiff alleges the officers failed to confiscate Mr. Cosenza's firearms when they undisputedly knew he possessed them.  The defendant officers claim they are entitled to governmental immunity, and seek summary judgment on that defense. Because the defense is subject to an exception for identifiable persons subject to imminent harm, and because the factual record demonstrates that a reasonable jury could find Mrs. Giaimo was such a person, summary judgment should be denied. '

Connecticut law provides that where a public official's duty to act involves exercise of discretion, the negligent failure to so act does not subject the public official to liability. Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 167 (1988).  Generally, the operation of a police department is a discretionary governmental function, and the acts or omissions of police officers in exercising their duties are discretionary in nature.  Id. at 180. However, this general rule admits to exceptions.  Public officials, such as police officers, can be held liable when performing a discretionary act:  (1) when the circumstances make it apparent to the public officer that his or her failure to act would likely subject an identifiable person to imminent harm; (2) where a statute specifically provides for a cause of action against a municipality or municipal officer for failure to enforce certain laws; and (3) where

the alleged acts involve malice, wantonness, or intent to injure rather than negligence. Purzycki v. Fairfield, 244 Conn. 101, 108 (1998).

The identifiable victim subject to imminent harm exception has been applied to police protection cases.  In Peters v. Town of Greenwich, No. CV950147192S, 2001 WL 51671 (Conn.Super. Jan. 2, 2001), plaintiff sued the Town of Greenwich and individual officers of the Greenwich Police Department, inter alia, for negligently failing to protect her decedent from being fatally shot by a stalker.  The decedent, Jack Peters, was being stalked by a delusional friend of his son, one Wilson.  The individual police officers were directly aware that Wilson attributed all his troubles to Peters, and that Wilson had made direct threats of violence directed toward Peters.  Despite this knowledge, one of the Greenwich officers told Peters that he was in no danger and should not worry.  Shortly thereafter, Wilson shot Peters as he was swimming in his backyard pool.  The individual defendants moved to strike the negligence counts against them, claiming governmental immunity.  The court, however, concluded that the facts were susceptible to application of the identifiable person-imminent harm exception:

> The plaintiff sufficiently alleges a dangerous condition, namely that an identifiable person, the plaintiff's decedent, was being actively threatened and harassed by Andrew Wilson.  Moreover, the plaintiff sufficiently alleges that this dangerous condition was foreseeable in that the defendants had specific notice of the threatening behavior and knew or should have known of the continuing threat to the plaintiff's decedent.  Finally, the plaintiff sufficiently alleges a foreseeably dangerous condition that was limited in duration, to the period in which Andrew Wilson had returned to Connecticut at the end of July 1993 in order to "get on with the retribution," and limited in geographical scope, to the location of the plaintiff's decedent in relation to the location of Andrew Wilson within Greenwich, Connecticut.  Therefore, this court finds that the facts alleged in counts one and two sufficiently

allege the imminence requirement of the identifiable person-imminent harm
exception.

Id. at *7.

The facts of this case likewise support the existence of the identifiable person-
imminent harm exception.  The East Haven Police Department, through its individual
officers, Cascio, Scaramella, Torello, McCarthy and D'Amato, knew that Mrs. Giaimo was
being actively harassed and threatened by Mr. Cosenza.  They likewise knew from Mrs.
Giaimo and from Marshal Baldo that Mr. Cosenza possessed guns.  Thus, as was Mr.
Peters, Mrs. Giaimo was an identifiable person.  As in Peters, the danger to Mrs. Giaimo
was foreseeable in that the defendants had specific notice of the threatening behavior and
knew, or should have known, of the threat to her.  Similarly to Peters, the danger to Mrs.
Giaimo was limited in duration to the period after which Mrs. Giaimo removed Mr. Cosenza
from the marital home and obtained a restraining order against him, and was limited in
geographical scope, to the location of the plaintiff's decedent in relation to the location of
Mr. Cosenza in East Haven, Connecticut.

In Florence v. Town of Plainfield, 2004 WL 203106 (Conn. Super. Jan. 16, 2004),
plaintiff claimed the Town of Plainfield and several of its officers failed to protect her
decedent from being murdered by her estranged boyfriend whose violent nature was
known to the police.  The defendants claimed governmental immunity, and plaintiff alleged
the applicability of the identifiable person-imminent harm exception.  The court found
plaintiff had sufficiently alleged facts supporting the exception.  Florence is persuasive

18

here.  In <u>Florence</u>, the police were aware of four reports by the decedent of domestic abuse

against her by the boyfriend.  Here, the police were aware of two separate reports of

domestic abuse by Mrs. Giaimo, including threats made by Mr. Cosenza, as well as a

restraining order against him and an arrest for violating that restraining order.  Importantly,

in <u>Florence</u>, as here, the police failed to confiscate the abuser's handguns even after a

restraining order was in place:

> [t]he department, although it knew or reasonably should have known that the
> restraining order existed and that Latour did possess a handgun, failed to follow its
> own protocol by ensuring that Latour did not possess any handguns during the
> period of time that the restraining order was in effect.

<u>Id.</u> at * 3.

The Town of East Haven did not even have a protocol.  As the testimony

demonstrates, each officer was left to his or her own devices regarding removal of guns in

connection with a restraining order.  In attempting to distinguish <u>Florence</u>, defendants make

much of the court's recognition that Plainfield was a small town, and that the police there

would be expected to know about the violent propensities and incidents involving its

residents more so than in a larger town, or urban setting.  First, the Town of East Haven is

not a metropolis; its population is roughly ten thousand more people than Plainfield.

Second, here the East Haven Police Department <u>knew</u> about Mr. Cosenza and about his

violent tendencies, as evidenced by the Reports of Officers Scaramella-Nubig, Torello and

Cascio, as well as the testimony of Officer Cascio – common knowledge around Town was

not necessary here.  The critical importance of protecting identifiable victims of domestic

abuse was eloquently stated by Judge Foley:

> The court concludes that under the facts as stipulated, the police failed to take
> immediate and available measures to protect her from a known, violent aggressor
> who was believed to be unlawfully armed.  The officers of the Plainfield Police
> Department knew, or clearly should have known, that domestic violence is perhaps
> the most frequent cause of unexpected death of women.  Our society demand
> heightened vigilance by or police in situations where the principal actor involved in a
> domestic violence complaint has such a specific history of violence, aggression and
> criminal behavior.

Id. at * 7.

As delineated above, plaintiff has set forth facts demonstrating the applicability of the

identifiable person-imminent harm exception to governmental immunity in this case.  A

reasonable fact finder could conclude from these facts that Mrs. Giaimo was an identifiable

person subject to imminent harm by the actions of Mr. Cosenza.  Accordingly, summary

judgment should not enter.  See Charleston v. City of New Haven, No. CV030478287, 2004

WL 304085 (Conn.Super. Jan. 27, 2004) (denying summary judgment on governmental

immunity defense because factual issue existed as to whether plaintiff was placed in

danger of imminent harm); Mikita v. Barre, No. CV 990430564, 2001 WL 651171

(Conn.Super. May 22, 2001) (denying summary judgment on governmental immunity

because question of fact existed as to whether plaintiff was foreseeable victim in imminent

harm).

Finally, the Town of East Haven claims that if the individual officers are entitled to

immunity, the Town is entitled to summary judgment on plaintiff's indemnification claim

under Conn.Gen.Stat. §7-465 because the officers would not be obligated for damages. First, for the reasons articulated *supra*, the individual officers are not entitled to governmental immunity because Mrs. Giaimo was an identifiable person subject to imminent harm.  Second, plaintiff's state law claims against the Town of East Haven are not restricted to indemnification under Conn.Gen.Stat. §7-465.  Plaintiff has alleged a claim against the Town under Conn.Gen.Stat. §52-557n, which imposes liability directly against the municipality for the acts of its employees.  Under §52-557n, indemnification is not an issue.

## IV.  Conclusion

For the foregoing reasons, defendants' Motion for Summary Judgment should be denied.

THE PLAINTIFF


By: _____
       Rosemarie Paine (ct15694)
       JACOBS, GRUDBERG, BELT & DOW, P.C.
       350 Orange Street
       New Haven, CT 06503
       Telephone No.: 203-772-3100
       Facsimile No.: 203-772-1691
       e-mail: rpaine@jacobslaw.com

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed first class, postage prepaid this 21st day of May 2004 to:

Hugh Keefe, Esquire
Lynch, Traub, Keefe & Errante, P.C.
52 Trumbull Street
New Haven, CT 06506

_____
Rosemarie Paine