UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SANDRA SMITH,                          :
as Executrix of the                    :
Estate of Josephine Giaimo,            :
                                       :
            Plaintiff,                 :
                                       :
      v.                               :
                                       :    CIVIL NO. 3:01cv1375(AHN)
TOWN OF EAST HAVEN,                    :
OFFICER MIKE D'AMATO,                  :
OFFICER DAVID TORELLO,                 :
OFFICER JOHN CASCIO,                   :
OFFICER LISA SCARAMELLA, and           :
OFFICER KEVIN McCARTHY,                :
                                       :
            Defendants.                :


<u>RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff Sandra Smith ("Smith"), as executrix of the estate of Josephine Giaimo ("Giaimo" or "decedent"), brings this action alleging violations of federal and state law against the Town of East Haven (the "Town") and five officers of the town police department (the "Department"): Mike D'Amato ("D'Amato"), David Torello ("Torello"), John Cascio ("Cascio"), Lisa Scaramella ("Scaramella"), and Kevin McCarthy ("McCarthy") (collectively, the "Individual Defendants"). Pending before the court is the motion for summary judgment filed by the Town and the Individual Defendants [doc. # 27]. For the reasons discussed below, the motion is GRANTED in part and DENIED in part.

FACTS

Based on its review of the summary judgment record, the court finds the following material facts are not in dispute:

In May 2000, Giaimo was separated from, and in the process of divorcing her estranged husband, Frank Cosenza ("Cosenza"), who was then 77 years old.  After the separation, Cosenza began making harassing telephone calls to Giaimo.

On June 28, 2000, Giaimo filed two complaints with the Town police, reporting that Cosenza was harassing her.  At that time, Cosenza resided in New Haven and thus, was not within the jurisdiction of the Town police.  Officer Scaramella responded to Giaimo's first complaint.  According to Scaramella's report, Giaimo told her that Cosenza had tried to follow her and threatened to come to her home.  Officer Scaramella took no further action and did not conduct an investigation.

Officer Cascio responded to Giaimo's second call to the Town police on June 28, 2000 and found her in an emotionally distraught state.  Giaimo told Officer Cascio that she had seen Cosenza peering into her window; that Cosenza had called her on the telephone to describe what she was wearing; that Cosenza had a gun permit; and that she believed Cosenza owned guns.  Based on this interview, Officer Cascio advised Giaimo to obtain a restraining order against Cosenza and told her that a restraining order would cause Cosenza's guns and gun permit to be taken away.

In the weeks following his meeting with Giaimo, Officer Cascio took a personal interest in Giaimo's problems with Cosenza. For example, Officer Cascio tried to reach Cosenza by telephone and left him voicemail messages. He also tried to speak to Cosenza during his off-duty hours, and left his business card and voice messages with him. Officer Cascio continued to encourage Giaimo to obtain a restraining order against Cosenza, and he gave her his personal cell phone number and told her to call him if Cosenza bothered her again.

On July 6, 2000, Giaimo obtained a restraining order that required Cosenza to stay at least 500 feet away from Giaimo and also to surrender any guns in his possession to the Commissioner of Public Safety within two days of becoming subject to the order. Giaimo's affidavit, which was appended to the restraining order, stated that Cosenza possessed a gun permit, had threatened Giaimo's life on several occasions, and had told Giaimo that he would kill her if she ever called the police again.

On July 7, 2000, a deputy sheriff served a copy of the restraining order on Cosenza and then served Officer D'Amato on behalf of the Town police. The deputy sheriff told Officer D'Amato that Cosenza had admitted to him that he possessed firearms. Officer D'Amato passed this information on to his supervisor without making a report or taking any additional action.

Officer Cascio stayed in daily contact with Giaimo until she obtained the restraining order.  Thereafter, Officer Cascio stayed in contact with Giaimo and told her to call the police if Cosenza violated the order.

On July 12, 2000, Giaimo reported to the Town police that Cosenza had followed her twice that day and confronted her.  In response, Officers Torello and McCarthy arrested Cosenza and charged him with breach of peace.  At that time, Officer Torello took physical possession of Cosenza's gun permit, but neither he nor Officer McCarthy inquired about, or confiscated, Cosenza's guns.

After Cosenza's arrest, Officer Cascio spoke to Giaimo and her daughter, Smith.  Officer Cascio even traveled to the state Superior Court in New Haven during his off-duty hours to speak to the victim's advocate about Cosenza so as to communicate the gravity of the situation and to ensure that Cosenza was not underestimated because of his age.  Officer Cascio never made any attempt to confiscate Cosenza's guns.

On July 20, 2000, while Giaimo was attending an open-air concert on the East Haven Green, Cosenza approached her and fatally shot her in the head.

After Giaimo's murder, the Office of the Victim Advocate ("OVA") prepared a report concerning her murder, entitled Independent Investigative Report Murder of Josephine Giaimo (the

"Report").  The Report indicates that at the time of the underlying incident, the Commissioner of Public Safety, in conjunction with the Chief State's Attorney and the Connecticut Police Chief's Association, was charged with developing a protocol to ensure that persons ineligible to possess firearms as a result of a restraining order surrendered them as required, but notes that there was no such statewide protocol or enforcement in place.  Further, the Report states that, at the time of Giaimo's murder, there was confusion as to whether municipal officers could or should investigate and enforce the surrender of guns pursuant to a restraining order when the subject of the restraining order was not within the local jurisdiction.

After the OVA's Report was issued, the Commissioner of Public Safety, in conjunction with the Chief State's Attorney and the Connecticut Police Chief's Association, developed a protocol to ensure that persons who become ineligible to possess firearms as a result of domestic abuse restraining orders comply with the handgun restriction.  Under the protocol, restraining orders are served on the local law enforcement agencies for the jurisdiction where both the subject of the order and the victim reside. Thereafter, the local law enforcement agency having jurisdiction is required to transmit the order to the Department of Public Safety Special Licensing and Firearms Unit (the "Department"), query the Department regarding information available on the

subject's permit status and registration data and ascertain whether the subject complied with the handgun restriction, and, in the event of non-compliance, conduct a follow-up investigation.

STANDARD

A Rule 56 motion for summary judgment may be granted if the court determines that the moving party is entitled to judgment as a matter of law because there are no genuine issues of material fact to be tried.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995).  After discovery, if the party against whom summary judgment is sought "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 883-85 (1990); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In considering a Rule 56 motion, the court's responsibility is not to resolve disputed issues of fact, but rather to assess whether there are any factual issues to be tried, while resolving all ambiguities and drawing all reasonable inferences against the moving party.  See Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11

(2d Cir. 1986) (citing <u>Anderson</u>, 477 U.S. at 248; <u>Eastway Constr.
Corp. v. City of New York</u>, 762 F.2d 243, 249 (2d Cir. 1985)).
The substantive law governing a particular case identifies those
facts that are material with respect to a motion for summary
judgment. <u>See</u> <u>Anderson</u>, 477 U.S. at 248. A court may grant
summary judgment only "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact . . . ." <u>Miner v. Glen Falls</u>, 999 F.2d 655, 661
(2d Cir. 1993) (citation omitted).

"A dispute regarding a material fact is genuine 'if the
evidence is such that a reasonable jury could return a verdict
for the nonmoving party.'" <u>Aldrich v. Randolph Cent. Sch. Dist.</u>,
963 F.2d 520, 523 (2d Cir. 1992) (quoting <u>Anderson</u>, 477 U.S. at
248). Thus, "[o]nly when reasonable minds could not differ as to
the import of the evidence is summary judgment proper." <u>Bryant</u>
<u>v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991).

<u>DISCUSSION</u>

Smith asserts three claims: (1) a § 1983 substantive due
process claim based on the Defendants' failure to protect Giaimo
from Cosenza's violent acts; (2) a § 1983 <u>Monell</u> claim against
the Town for failing to train officers as to when they should
confiscate firearms from subjects of domestic violence
complaints; and (3) a state-law negligence action based on the

7

Defendants' failure to act to protect Giaimo from "imminent harm." The Town moves for summary judgment on the <u>Monell</u> claim. The Individual Defendants move for summary judgment on the substantive due process and state-law negligence claims on the grounds that they are entitled to qualified and governmental immunity. Based on the summary judgment record, the court finds that no triable issue exists as to the substantive due process and <u>Monell</u> claims. With regard to the state-law negligence claim, the court finds that there are disputed issues of fact as to whether the Individual Defendants failed to protect the decedent from a known imminent danger despite a duty to do so, and thus summary judgment on the Individual Defendants' claim of governmental immunity is denied.

I.   <u>Substantive Due Process Claim</u>

Smith contends that the Individual Defendants' failure to protect Giaimo from Cosenza constitutes a violation of Giaimo's substantive due process rights because they, particularly Officer Cascio, entered into a "special relationship" with Giaimo that "rendered [her] more vulnerable because she labored under a false sense of security . . . in reliance on [their] actions." (Smith Br. at 9.) The Individual Defendants move for summary judgment on this § 1983 claim on the grounds that Giaimo did not have a protected constitutional right as alleged and that they are entitled to qualified immunity.

As a general rule, "a [s]tate's failure to protect an individual against private violence . . . does not constitute a violation of the Due Process Clause." <u>DeShaney v. Winnebago County Soc. Servs</u>., 489 U.S. 189, 196 (1989) (finding that Due Process Clause "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty or property interests.")  However, under the "state-created danger" and the "special relationship" exceptions to this general rule, an individual may have a constitutionally-protected right to be protected from the conduct of private actors.

The "special relationship" exception applies to persons in state custody, such as to foster children, or persons who have their freedom of movement limited by the state, e.g. undercover witnesses.  <u>See</u> <u>Doe v. New York Dept. of Social Servs</u>., 649 F.2d 134 (2d Cir. 1981) (foster children); <u>G-69 v. Degnan</u>, 745 F. Supp. 254 (D. N.J. 1990) (undercover witnesses).  In such circumstances, the affirmative duty to protect an individual "arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf."  <u>DeShaney</u>, 489 U.S. at 200.

Here, although Smith repeatedly refers to the existence of a "special relationship" between Giaimo and the Individual

9

Defendants, this special relationship does not provide the necessary factual basis for a substantive due process violation. The facts that the Individual Defendants knew of Giaimo's situation and indicated to her that they were trying to help is not sufficient to impose an affirmative duty to protect her.  See id.  In the absence of any facts in the record to suggest that the Individual Defendants limited Giaimo's freedom to act on her own behalf or restricted her freedom of movement in any way, the special relationship exception does not apply.

The "state-created danger" exception, which applies only in very limited circumstances, imposes liability on state actors under a substantive due process theory if the state actors affirmatively assist in creating or increasing the danger to a victim of crime.  See Dwares v. City of New York, 985 F.2d 94, 98-99 (2d Cir. 1993).  Under this exception, police officers may not be held liable for failing to act on reports of past violence unless they "assist[] in creating or increasing the danger to the victim."  Id.  For example, in Dwares, the Second Circuit found that the plaintiffs had set forth a cognizable substantive due process claim by alleging that the police had conspired with "skinheads" at a white supremacist rally to permit the "skinheads" to assault the plaintiffs without police intervention.  See id. at 99.  See also Clarke v. Sweeney, 312 F.Supp.2d 277 (2004) (finding that the state-created danger

10

exception did not apply where police allegedly failed to protect a witness and her son from danger because the police had taken no action to increase the victims' risk or vulnerability).

In this case, there are no facts to suggest that the Individual Defendants did anything to create or increase Giaimo's risk of being harmed by Cosenza.  Thus, even though the acts of the Individual Defendants may have given Giaimo a false sense of security that rendered her more vulnerable to harm from Cosenza, the law does not impose a duty on the Individual Defendants under the state-created danger exception.  See Clarke, 312 F.Supp.2d at 293-94.  The actions of the Individual Defendants simply do not constitute the affirmative assistance necessary for application of the state-created danger exception because they did not increase Giaimo's risk or vulnerability to Cosenza.  To the contrary, the undisputed facts in this case establish that, unlike the police officers in Dwares, who allegedly conspired with white supremacists to allow the latter to commit illegal assaults, the Individual Defendants did nothing to facilitate Cosenza's ability to harass and harm Giaimo.

Because Smith has failed to provide any evidence that would support either the special relationship or state-created danger exception to the rule that a state's actor's failure to protect an individual against private violence does not constitute a

substantive due process violation, Smith's § 1983 claim against the Individual Defendants cannot be sustained.

Moreover, because the undisputed facts show that Giaimo did not have a clearly established constitutional right to protection from private violence, the Individual Defendants are entitled to qualified immunity. A police officer is entitled to qualified immunity from liability for his discretionary actions if either (1) his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), or (2) it was "objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (internal citations and quotation marks omitted). Qualified immunity protects government officials performing their duties from the burdens of trial and the threat of monetary liability. See Harlow, 457 U.S. at 818 (1982). A government official surrenders this immunity only where a reasonable official would have known that his action violated clearly established constitutional rights. See id. at 818-19.

In the summer of 2000, when the events at issue took place, it was clearly established that a state actor's failure to protect an individual from private violence did not constitute a substantive due process violation. E.g., Deshaney, 489 U.S. at

196 (holding that state has no general affirmative duty to protect individual's from private violence).  The parameters of the special relationship and state-created danger exceptions were also clearly established at that time.  E.g., Dwares, 985 F.2d at 98-99 (holding that police officers cannot be liable for failing to act on reports of past violence unless they assisted in creating or increasing the danger to the victim); Doe, 649 F.2d at 142 (holding that special relationship exception applies to individuals in state custody such as foster children); G-69, 745 F.Supp at 265 (holding that special relationship exception applies to individuals in state custody such as undercover witnesses).  Thus, because Giaimo was not in state custody, no limitations were placed on her freedom to act on her own behalf, and because the Individual Defendants did nothing to affirmatively assist Cosenza or otherwise provide him with an opportunity to harm Giaimo, it was objectively reasonable for the Individual Defendants to believe that their discretionary actions would not subject them to liability under § 1983.

II.  Monell Claim

Smith also alleges that the Town is liable for the acts or omissions of the Individual Defendants under § 1983 because it failed to train its police officers on the proper procedure for handgun restriction following the issuance of a restraining order.  The Town moves for summary judgment on this Monell claim

on the grounds that Smith has failed to present any evidence of deliberate indifference.  For the reasons discussed below, the court grants the motion for summary judgment on the Monell claim.

It is well established that a municipality in a § 1983 action is not subject to claims based on respondeat superior or vicarious liability.  See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 166 (1993); Monell v. Department of Soc. Serv., 436 U.S. 658, 691 (1978).  A municipality may only be liable "under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  Monell, 436 U.S. at 690.  The Second Circuit has held that Monell liability may be premised on a municipality's failure to train its officers when such inaction amounts to a "deliberate indifference to the rights of the persons with whom the police come into contact."  Anthony v. City of New York, 339 F.3d 129, 139 (2d Cir. 2003).  To establish a failure to train that constitutes deliberate indifference, the plaintiff must satisfy three elements:

> (1) that a policymaker of the municipality knows to a moral certainty that its employees will confront a given situation; (2) that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) that the wrong choice by the employee will frequently cause the deprivation of a citizen's constitutional rights.

14

See <u>Nicholson v. Scoppetta</u>, 344 F.3d 154, 166 (2d Cir. 2003)
(citations omitted).  Additionally, the plaintiff must
demonstrate that the inadequate training actually caused the
violation of the plaintiff's federally protected right.  <u>See</u> <u>City
of Canton v. Harris</u>, 489 U.S. 378, 391 (1989).

The Town asserts that Smith has not adduced any evidence to
support the key second element of deliberate indifference -- that
the situation presented either a difficult choice of the sort
that training or supervision would make less difficult or a
history of mishandling the situation by other employees.  The
Town correctly points out that there is no evidence that its
officers had a history of mishandling similar situations
involving decisions to seize firearms from a subject of a
domestic violence complaint.  Consequently, the determination of
deliberate indifference turns on whether the police were faced
with a difficult choice of the sort that training or supervision
would make less difficult.

There is nothing in the record evidence to support a finding
that the Individual Defendants were faced with a difficult choice
that training or supervision would have made less difficult.  To
the contrary, the evidence shows that the Individual Defendants
did not have any choice with regard to confiscating Cosenza's
guns.  At the time of the underlying incident, the Commissioner
of Public Safety, in conjunction with the Chief State's Attorney

and the Connecticut Police Chief's Association, was responsible
for developing protocol to ensure that subjects of domestic
violence restraining orders complied with the order's directive
to surrender guns.  See OVA Report at 29.  The record further
establishes that, at the time of the underlying incident, there
was no statewide protocol or enforcement mechanism to insure that
firearms were confiscated from subjects of domestic abuse
restraining orders.  See id.  Indeed, it was even unclear whether
municipal officers had jurisdiction to investigate and enforce
the surrender of guns pursuant to a restraining order when the
subject of the restraining order was not within their
jurisdiction.  See id.

Thus, when the restraining order was issued against Cosenza,
the Individual Defendants did not have a "difficult choice of the
sort that training or supervision [would] make less difficult."
Rather, because the Town police were not authorized or even
required to confiscate guns from the subject of a domestic
violence restraining order such as Cosenza who was a New Haven
resident and thus outside their jurisdiction, the Individual
Defendants did not have any decision to make as to whether they
should take away Cosenza's guns.  Where, as here, municipal
officers did not have any decision to make in this type of
situation, the municipality cannot be found deliberately

indifferent if it provides inadequate or even no training or supervision.

Moreover, the Town is also immune from liability under Monell because the underlying action of its officers was not unconstitutional.  In Monell, the Supreme Court held that "Congress did not intend municipalities to he held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."  Monell, 436 U.S. at 691.  As noted above, plaintiff has failed to provide any evidence that would support either the special relationship or state-created danger exception to the general rule that there is no constitutionally protected right of protection from the conduct of private actors.  Moreover, at the time of the underlying events, it was not clearly established that local police were required or even authorized to confiscate firearms from a subject of a domestic violence restraining order who was not in its jurisdiction.  Therefore, the failure of the Town to train its officers regarding confiscation of guns from subjects of domestic abuse restraining orders cannot constitute deliberate indifference to one's constitutional rights and cannot serve as a basis for municipal liability under Monell.

Accordingly, the Town's motion for summary judgment is granted as to the Monell claim.

17

III. <u>State-Law Negligence Claim</u>

The Individual Defendants have also moved for summary judgment on Smith's state law negligence claim. They assert that they are entitled to governmental immunity and that the identifiable person/imminent harm exception to governmental immunity does not apply. The court disagrees.[1]

When a Connecticut public official's duty to act involves the exercise of discretion, the official enjoys governmental immunity even if he negligently fails to take action. See <u>Gordon v. Bridgeport Housing Auth.</u>, 208 Conn. 161, 167 (1988). An exception to this general rule exists where an officer's failure to act would likely subject an "identifiable person to imminent harm." See <u>Purzycki v. Fairfield</u>, 244 Conn. 101, 108 (1998). Connecticut courts have held that this exception is only applicable when an identifiable person is subject to imminent harm from a dangerous condition that is limited both in duration and geography. In such a situation the exception applies because it should be apparent that action should be taken. See <u>Burns v. Board of Educ. of Stamford</u>, 228 Conn. 640, 650 (1994).

---

[1] A district court may decide to retain jurisdiction over a pendent state claim even though it has dismissed the underlying federal claim. See <u>Carnegie Mellon University v. Cohill</u>, 484 U.S. 343, 350 n.7, 108 S.Ct. 614, 619 n.7 (1988). Based on factors such as judicial economy, convenience, and fairness, the court will retain jurisdiction over Smith's state law negligence claim. See <u>id</u>.

For example, in <u>Peters v. Town of Greenwich</u>, No.
CV950147192S, 2001 WL 51671 (Conn. Super. Jan. 2, 2001), the
state court refused to dismiss a claim against Greenwich and its
police officers for negligently failing to protect an individual
from a stalker.  In <u>Peters</u>, the police were aware that the
decedent was being stalked by a delusional friend of the
decedent's son and that the stalker had made threats against the
life of the decedent, but took no action because they believed
the stalker did not pose a danger.  The court found that the
identifiable person/imminent harm exception applied because the
stalker created a dangerous condition to an identifiable person
that was limited in duration to the time the stalker returned to
Connecticut to seek out the decedent for retribution, as well as
to geographical scope--the Town of Greenwich--the place where the
decedent lived and the stalker would look for and find him.

Similarly, in <u>Florence v. Town of Plainfield</u>, No.
CV03:0069580S, 2004 WL 203106 (Conn. Super. Jan. 16, 2004), the
court applied the identifiable person/imminent harm exception
where the police failed to protect the decedent from being
murdered by her estranged boyfriend, an individual with a
reputation for violence, even though they were aware that the
decedent had made four reports of domestic abuse by her boyfriend
and that he had a gun.  Because of Plainfield's small size and
rural setting, the court found that the circumstances were

distinguishable "from situations which might arise in larger towns or urban settings". Id. at *2.

Here, the Individual Defendants concede that Giaimo may have been an identifiable person for purposes of the governmental immunity exception, but claim that under Evon v. Andrews, 211 Conn. 501 (1989), the harm posed to her by Cosenza was not imminent. In Evon, the decedents were killed by a fire in their apartment building, but because the risk that a fire might occur was dependent on many factors, and because the fire could have occurred at any future time or not at all, the decedents were not subject to imminent harm. Id. at 507. The Individual Defendants' reliance on Evon is misplaced.

The facts in this case establish that Officers Cascio, Torello, and McCarthy were aware of the danger posed to Giaimo by Cosenza. Specifically, they and other officers knew that (1) Giaimo had made two reports of domestic abuse by Cosenza, (2) Cosenza had guns, (3) Cosenza had threatened to kill Giaimo, (4) there was a restraining order against Cosenza, (5) Cosenza had been arrested for violating the restraining order, and (6) Town officers had not confiscated Cosenza's firearms. Based on this evidence, a jury could conclude that Cosenza posed an imminent harm to Giaimo. Moreover, the Individual Defendants' attempt to distinguish this case from Florence on the grounds that East Haven, unlike the town at issue in Florence, is neither small nor

rural, is unpersuasive.  The facts here are akin to those in
Peters, where the decedent who lived in a large urban town sought
police protection in the face of the stalker's threats, and are
actually closer to those in Florence, where the victim had
applied for a restraining order and the police were aware of the
threat of violence and that the perpetrator had guns.  In both
cases, the size of the town was not dispositive.

The court concludes that it should be left to a jury to
decide whether Giaimo was an identifiable person subject to
imminent harm, and if so, whether the Individual Defendants
breached the resulting duty owed to her to protect her from harm
from Cosenza.  _____

CONCLUSION

For the foregoing reasons, the motion for summary judgment
[doc. # 27] is GRANTED with respect to Smith's substantive due
process and Monell claims, but DENIED with respect to her pendent
state-law negligence claim.

SO ORDERED this 22nd day of March, 2005, at Bridgeport,
Connecticut.


                         /s/ Alan H. Nevas
                              Alan H. Nevas
                         United States District Judge