UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| SANDRA SMITH, | : |
| As Executrix of the | |
| Estate of Josephine Giaimo | : NO. 3:01 CV 1375(AHN) |
| vs. | : |
| TOWN OF EAST HAVEN | : |
| Individual Officers: Mike D'Amato, Badge #0430; | : |
| David Torello, Badge # 1750; | : |
| John Cascio, Badge # 0310 | : |
| Lisa Scaramella, Badge #1580; and | : |
| Kevin McCarthy, Badge #1080 | : MAY 20, 2005 |

**OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION**

By Ruling dated March 22, 2005, this Court granted, in part and denied, in part, defendants' motion for summary judgment. While the Court granted summary judgment as to plaintiff's federal claims,[1] the Court denied summary judgment as to plaintiff's state law claim. Plaintiff's state law claim is based upon a well recognized exception to governmental immunity for the negligent acts of governmental employees: namely that the plaintiff's decedent was an identifiable victim in danger of imminent harm. This Court properly found that a jury trial is the proper forum for this claim to be resolved. While the defendants move for reconsideration of the Court's denial of summary judgment on this claim, they have not pointed to any controlling decisions or data that the Court overlooked.

---

[1] The plaintiff had made federal claims pursuant to 42 U.S.C. §1983 and Monell v. Department of Social Services, 436 U.S. 658, 691 (1978),

Their motion presents no basis for changing this Court's prior ruling. Accordingly, plaintiff requests that defendants' Motion for Reconsideration be denied.

Local Rule of Civil Procedure 7(c), providing for motions for reconsideration, "requires the moving party to meet stringent standards." Martin v. Dupont Flooring Systems, Inc., 301CV2189SRU, 2004 WL 1171208 (D.Conn. May 25, 2004) (Underhill, J.) (internal quotations and citation omitted). Motions for reconsiderations "'will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" Id. (quoting Shrader v. CSX Transportation, Inc., 70 F.3d 255, 257 (2d Cir. 1995)). "In order to prevent 'wasteful repetition of arguments already briefed, considered and decided,' a motion for reconsideration is granted only in a narrow range of circumstances." Id. (quoting Schonberger v. Serchuk, 742 F.Supp. 108, 119 (S.D.N.Y. 1990)). Thus, a "'motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided.'" Goins v. JBC & Associates, P.C., No. 3:02CV1069MRK, 2004 WL 2713235 (D.Conn. Nov. 24, 2004)(Kravitz, J.) (quoting Shrader, 70 F.3d at 257). "There are three grounds that justify granting a motion for reconsideration: (1) an intervening change in controlling law; (2) the availability of newly discovered evidence; and (3) the need to correct clear error or prevent manifest injustice." King v. State of Connecticut Appellate Court, 3:03-CV-1994, 2005 WL 293502 (D.Conn. Feb. 7, 2005) (Hall, J.) (citing Virgin Atlantic Airways Ltd. V. Nat'l Mediation Board, 956 F.2d 1245, 1255 (2d Cir. 1992)).

Defendants do not argue an intervening change in controlling law, nor do they proffer newly discovered evidence.[2] Assumedly, defendants argue clear error. In fact, Defendants' motion incorrectly states the grounds for the plaintiff's state law claims. It is simply an attempt at getting a second bite at the apple.

### I.    THE COURT'S RULING IS NOT INTERNALLY INCONSISTENT.

Defendants claim this Court's decision that a jury must determine whether Ms. Giaimo was an identifiable person subject to imminent harm under state law is inconsistent with the Court's determination that plaintiff's Monell claim was insufficient as a matter of law. Specifically, defendants mistakenly assume that plaintiff's state law claim rests solely on an allegation that defendants failed to act by failing to confiscate guns possessed by Mr. Cosenza. From that, defendants argue that the Court's finding on the Monell claim -- that the officers had no authority or duty to confiscate guns from the subject of a domestic

---

[2] Defendants do proffer the April 1, 2005 affidavits of Officer John Cascio, Officer Kevin McCarthy, and Officer David Torello. These affidavits, apparently filed to show that Ms. Giaimo never told the officers Mr. Cosenza threatened to shoot or kill her, contain no "newly discovered" information, but rather set forth information that could have been presented to the Court during the initial summary judgment briefing. A party moving for reconsideration "may not advance new facts, issues or arguments not previously presented to the Court." The Dweck Law Firm, LLP v. Mann, No. 03 Civ. 8967 SAS, 2004 WL 2202587 (S.D.N.Y. Sept. 30, 2004) (internal quotations and citation omitted). Rather, defendants' affidavits are an impermissible attempt to "plug gaps in the[ir] original argument." See Goins v. JBC & Associates, P.C., No. 3:02CV1069MRK, 2004 WL 2713235 (D.Conn. Nov. 24, 2004) (Kravitz, J.). Even were the Court to consider the affidavits, they at best create a factual dispute for resolution by a jury. See discussion, infra. In the event the Court does consider these new submissions, plaintiff has submitted additional factual support in rebuttal.

3

violence restraining order – negates plaintiff's argument under state law, as well.[3] Even a cursory reading of plaintiff's complaint demonstrates the fallacy of this reconsideration argument.

While plaintiff does allege that the East Haven Police Department failed to take any action to confiscate the firearms possessed by Mr. Cosenza (Pl's. Amended Compl. at ¶16), plaintiff also alleges that the East Haven Police Department could have taken other actions to protect Ms. Giaimo. At paragraph 15 of her complaint, plaintiff alleges that, after his breach of peace arrest for confronting Ms. Giaimo, no attempt was made to arrest Mr. Cosenza on the more serious felony level charges which were warranted by his conduct. Plaintiff further alleges that bail was set (at the station by the police) in a low amount, which did not reflect the serious nature of Cosenza's actions and his threat to Ms. Giaimo. (Pl's. Amended Compl. at ¶15). Importantly, plaintiff alleged in her state law count that, "[t]he defendant officers knew Josephine Giaimo was a person in danger of imminent harm from Frank Cosenza, and as such had a duty to protect her;" and that "[t]he defendant officers

---

[3] Plaintiff does not concede that defendants correctly interpret the Court's ruling in connection with the Monell claim. Defendants claim the Court's ruling on the "difficult choice" aspect of the Monell issue forecloses plaintiff from offering argument or evidence that defendants should have arrested Mr. Cosenza or confiscated his guns in support of her state law claim. (Def. Mot. at 3). First, the Court's determination was based on the record before it at summary judgment, which may not be the record at trial. Second, plaintiffs do not understand the Court's order to preclude them, as a legal matter, from presenting evidence at Trial concerning defendants' state law obligation to protect plaintiff, an identifiable victim, from imminent harm, which protection could reasonably have included applying for a search warrant and confiscating guns.

failed to take appropriate action to protect Ms. Giaimo, when in the exercise of reasonable care they should have done so." (Pl's. Amended Compl. at ¶¶ 20-21).

Contrary to defendants' assertions, plaintiff's complaint clearly and unambiguously alleges more than the East Haven Police Department's failure to confiscate Mr. Cosenza's guns. Rather, plaintiff alleges a general failure to protect in her state law claim which a jury could find included, inter alia, failing to arrest Mr. Cosenza on a more serious charge when he violated the TRO, as well as setting bail too low. The Court's finding regarding defendants' duty to confiscate Mr. Cosenza's guns does not affect the other allegations of failure to protect made by plaintiff in her complaint. Indeed, failure to confiscate Mr. Cosenza's guns was only one factor considered by the Court in determining whether a jury could conclude that Mr. Cosenza posed an imminent threat to Ms. Giaimo, of which defendants were aware.[4] A plain reading of plaintiff's complaint and the Court's decision belies defendants' argument that the decision is inconsistent. Reconsideration on this ground should be denied.

---

[4] In its decision the Court stated:

> The facts in this case establish that Officers Cascio, Torello, and McCarthy were aware of the danger posed to Giaimo by Cosenza. Specifically, they and other officers knew that (1) Giaimo had made two reports of domestic abuse by Cosenza, (2) Cosenza had guns, (3) Cosenza had threatened to kill Giaimo, (4) there was a restraining order against Cosenza, (5) Cosenza had been arrested for violating the restraining order, and (6) Town officers had not confiscated Cosenza's firearms. Based on this evidence, a jury could conclude that Cosenza posed an imminent threat to Giaimo.

(Ruling at 20).

II. **THE COURT PROPERLY FOUND THAT A JURY SHOULD DETERMINE FACTUAL ISSUES REGARDING WHAT THE DEFENDANT OFFICERS KNEW ABOUT MR. COSENZA'S DANGEROUS PROPENSITY.**

Ironically, defendants' argument about what the defendant officers knew concerning death and injury threats made by Mr. Cosenza to Ms. Giaimo only underscores the correctness of the Court's finding of a triable issue. Defendants' argument focuses on the knowledge of Officers Cascio, McCarthy and Torello.[5] Specifically, defendant Cascio claims in his April 2005 affidavit that Ms. Giaimo expressly told him that Mr. Cosenza never physically threatened her, or threatened to shoot her. Further, Officer Cascio claims Ms. Giaimo advised him she was not sure if Mr. Cosenza actually had any guns, but that she assumed so because of his gun permit. However, Ms. Giaimo's affidavit in support of her application for the restraining order is quite clear: "Frank Cosenza told me if I ever call the Police again he will kill me." (Exhibit J to Pl.'s Opp.). As the affidavit of Marshal Frank T. Baldo makes clear, a copy of that restraining order -- including the affidavit of Ms. Giaimo – was served on the East Haven Police Department, via Officer Mike D'Amato. (Baldo Affidavit at ¶10; Id.). Further, Marshal Baldo had personal knowledge, from speaking with

---

[5] Defendants' Motion for Reconsideration appears to be at odds with their Motion for Summary Judgment. In their Summary Judgment Motion, defendants move for judgment on behalf of all the individual officers, without distinguishing or excluding Officer Mike D'Amato in any way. In their Motion for Reconsideration, however, defendants state that only Officers Torello, Cascio, Scaramella and McCarthy originally moved for summary judgment. Indeed, defendants' reconsideration motion does not even address Officer D'Amato. This discrepancy and omission is interesting to note given plaintiff's factual showing that Officer D'Amato accepted the temporary restraining order and supporting documents from Marshal Baldo which contained Mr. Cosenza's death threat, and that Marshal Baldo told Officer D'Amato that Mr. Cosenza had guns.

6

Mr. Cosenza, that Mr. Cosenza owned two handguns that were in a box in his apartment. Significantly Marshal Baldo then communicated this fact to the East Haven Police Department. (Baldo Affidavit at ¶11; Id.).

Because, as plaintiff has demonstrated, the East Haven Police Department had Ms. Giaimo's statement that Mr. Cosenza threatened to kill her, and had the information that Mr. Cosenza possessed guns, a jury may not credit Officer Cascio's claim that he had no knowledge of the threats or the guns. This is particularly so where, as he conceded in his motion for reconsideration, (1) he had the most contact with Ms. Giaimo; (2) he knew the most about her relationship with Mr. Cosenza; and (3) he had conversations with her where she gave him vital information about her situation---all for the specific purpose that she be protected. It is hard to believe that she would not have told Cascio, a police officer, the very things that she told her daughter,[6] her lawyer,[7] and at least one judge in order to protect her safety. A jury could reasonably conclude that Officer Cascio's recollections of the events in question are clouded by guilt, remorse, self-protection, or a subconscious inability to accept that he was negligent and that a death resulted. This dispute of fact, namely, what Officer Cascio actually knew, or should have known, is a classic jury question. The Court should not reconsider its decision.

---

[6] See Affidavit of Mrs. Giaimo's daughter, attached to the Victim's Advocate Report. (Exhibit A). Only some portions of the Victim's Advocate Report were submitted by defendants in their initial moving papers.

[7] See Affidavit of the attorney representing Mrs. Giaimo in the TRO proceedings, attached to the Victim's Advocate Report. (Exhibit B).

The same is true regarding Officers McCarthy and Torello, who arrested Mr. Cosenza for violating the restraining order. Although their April 2005 affidavits claim they had no knowledge of threats or guns, a jury should decide whether Officers McCarthy and Torello were, or should have been, aware of the restraining order affidavit and Marshal Baldo's statement of first-hand knowledge about the guns. This is particularly so where Officers McCarthy and Torello arrested Mr. Cosenza for violating that very restraining order **which included Cosenza's threat to kill Giaimo if the police were called again**. A jury should be able to decide whether their failure actually to look at it, as is their apparent claim, violated their duty to protect Ms. Giaimo as an identifiable person subject to imminent harm. Moreover, a jury could also conclude that Officers McCarthy and Torello should have arrested Mr. Cosenza on a more serious felony charge, which could have imprisoned him longer. The Court should not reconsider its decision.

A jury could certainly conclude facts that Officer Scaramella's failure to follow-up on Ms. Giaimo's complaint violated her duty to protect Ms. Giaimo as an identifiable person subject to imminent harm. Officer Scaramella undertook the initial investigation of this domestic abuse case. Plaintiff offered evidence that she made no further investigation of the case -- despite Ms. Giaimo's reporting to her that Mr. Cosenza was making harassing phone calls to Ms. Giaimo's home, had tried to follow her, and was threatening to come to her home. The Court should not reconsider its decision.

Plaintiff has also offered evidence that Officer D'Amato personally took the restraining order and affidavit from Marshal Baldo, and that Marshal Baldo told Officer

D'Amato that Mr. Cosenza had guns.  A jury could also conclude that Officer D'Amato violated his duty to protect Mrs. Giaimo as an identifiable person subject to imminent harm – by disregarding a direct death threat from a man <u>possessing</u> <u>guns</u>.  Plaintiff has also offered evidence that it was Officer D'Amato who personally took the restraining order and affidavit from Marshall Baldo, and it was D'Amato to whom Marshall Baldo stated Mr. Cosenza told Baldo he had guns.  The Court should not alter its decision.

      Plaintiff has offered ample evidence that the officers of the East Haven Police Department knew -- from the Temporary Restraining Order affidavit in the Department's possession, and from Marshal Baldo's statements made directly to a member of the Department -- that Mr. Cosenza had threatened Ms. Giaimo's life and that he admitted having two guns.  From this evidence a jury could determine that, in any event, each individual officer had the "collective knowledge" of one another – including of Officer D'Amato who received the critical information from Marshal Baldo.  For example, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion, but sufficient information to justify the search or arrest was known to other officers cooperating in the investigation.  See <u>Giannullo v. City of New York</u>, 322 F.3d 139, 142 (2d Cir. 2003); <u>State v. Schoenbneelt</u>, 171 Conn. 119, 124 (1976).  "[W]here law enforcement authorities are cooperating in an investigation . . . knowledge of one is presumed shared by all."  <u>Illinois v. Andreas</u>, 463 U.S. 765, 772 n. 5 (1983).  Even taking into account the affidavits of Officers Torello, Cascio, and McCarthy, a jury could certainly find that the Department's knowledge

– through Officer D'Amato or otherwise -- that Mr. Cosenza made a specific death threat toward Ms. Giaimo and that he possessed guns renders those averments less than credible.

Plaintiff has adduced facts from which a jury could conclude that the East Haven Police Department tried to cover up evidence that it knew of the imminent threat of harm to Ms. Giaimo, yet took no action. Although defendants (save Officer D'Amato) now sign affidavits attesting that they didn't know Mr. Cosenza admitting having guns and had threatened Ms. Giaimo's life, there is compelling evidence that a jury could conclude their statements are self serving and false.  Marshall Baldo states in his affidavit that after Mrs. Giaimo's murder, he was summoned to the East Haven Police Department on July 27, 2000 department by Detective Bruce Scobie.  (Baldo Aff. ¶12; Pl.'s Exhibit J).  Once there, Scobie attempted to get Marshal Baldo to agree to a version of events other than what actually happened on July 7, 2000 -- when Baldo served the East Haven Police Department with a copy of the restraining order and its accompanying paperwork.  (Id.) Detective Scobie asked Marshal Baldo to adopt a version left out Marshal Baldo's service of Ms. Giaimo's affidavit (which included the death threats by Cosenza should Ms. Giaimo ever call the police again), and importantly the significant additional fact that Marshal Baldo specifically alerted the East Haven Police Department, on July 7, 2000, that Mr. Cosenza admitted he had more than one gun.  (Id.)

When Marshal Baldo refused to go along with Det. Scobie's incorrect account of the events, and affirmatively stated what had really occurred, Det. Scobie terminated the

10

conversation – Scobie made no note, report, or any other memorandum of the interview. He did not record in any way that Baldo -- the subject of his interview -- offered evidence the Department knew Ms. Giaimo was in imminent and real harm.  (Baldo Aff. ¶12; Pl.'s Exhibit J; Scobie Deposition at p. 40 line 14- p. 43 line 17  Exhibit CC).  Only after the Victim's Advocate report was published on October 16, 2000, and after Marshal Baldo had given an affidavit to the Victim's Advocate with that damaging information, that Det. Scobie again interviewed Marshal Baldo and, at that time, took a report acknowledging Marshal Baldo's description of events.  (Id.)

Detective Scobie, by his own admission, was assigned to investigate only the murder suicide; he can recall no other investigative directive.  (Scobie Deposition at page 36 lines 9-15; page 37 lines 10; also lines 16 –p38 line 15  Exhibit CC).  He readily admits that his inquiries of Baldo were not relevant to the murder suicide.  (Scobie Deposition at page 43 line 23; page 44 line 5, lines 11 - 18) (Exhibit CC).   In addition, he closed that case in early September 2000.  (Scobie Deposition at page 35 line 2; page 36 line 8) (Exhibit CC).  In view of these facts, Detective Scobie's "side investigation" into Marshal Baldo's service, his attempt to lead (or mislead) Baldo, and his failure to document the first interview, could lead a jury to infer that the Department was attempting to cover-up its knowledge of the danger facing Ms. Giaimo from Mr. Cosenza.  Such a jury conclusion could be bolstered by Detective Scobie's eventual admission that the very paperwork he tried to get Marshal Baldo to deny serving on the Department mysteriously turned up missing. (Scobie Deposition at page 44 line 11 – 22; page 45, line 19; page  47, line 10).

11

### III. A JURY MAY FIND THAT THE TOWN OF EAST HAVEN IS INDEPENDENTLY LIABLE UNDER CONN.GEN.STAT. §52-557n WITHOUT REGARD TO ANY IMMUNITY GRANTED TO THE INDIVIDUAL OFFICERS.

Plaintiff alleges that the Town of East Haven is liable to her under Conn.Gen.Stat. §52-557n which makes the municipality directly liable for negligent acts or omissions. As the Connecticut Supreme Court has stated: "[w]e recognize that there *may* be circumstances under which a municipality is held liable under §52-557n where it would have been able to avoid liability had suit been brought jointly against the employee and the municipality under §7-465." Spears v. Garcia, 263 Conn. 22, 37 (2003) (emphasis in original). The clear import of this holding is that a municipality may be liable for negligence even when the municipal employee involved has immunity from suit – which would not be the case under the straight indemnification penumbra of §7-465. Here, plaintiff has set forth evidence showing that the Town of East Haven, through the officers of its police department, knew Mr. Cosenza had threatened Ms. Giaimo, followed her, violated a restraining order she had gotten against him, threatened her life, and actually owned guns. Whether or not a jury finds that the individual officers have discretionary immunity for the failure to protect her, the Town of East Haven remains liable for her death under §52-557n. The knowledge of the Department and its officers, who are agents of the Town, is imputed to the Town. See Ford v. City of West Haven, No. CVG 950051003S, 1996 WL 40916 (Conn.Super. Jan. 17, 1996) (finding, under §52-557n, that the City of West Haven had

notice of alleged violations of various safety codes leading to a fatal fire because its employees and agents had such knowledge; the knowledge of those agents was imputed to their principal, the City).

### IV.     CONCLUSION

For these reasons, defendants' motion for reconsideration should be denied.

                        THE PLAINTIFF

                        By: /s/ Rosemarie Paine
                              Rosemarie Paine (ct15694)
                              JACOBS, GRUDBERG, BELT & DOW, P.C.
                              350 Orange Street
                              New Haven, CT 06503
                              Telephone No.: 203-772-3100
                              Facsimile No.: 203-772-1691
                              e-mail: rpaine@jacobslaw.com

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed first class, postage prepaid this 20th day of May 2005 to:

Hugh Keefe
Nicole Fournier Gelston
Lynch, Traub, Keefe & Errante, P.C.
52 Trumbull Street
New Haven, CT 06506

                                                /s/ Rosemarie Paine
                                                Rosemarie Paine